IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:18-cv-01891-RMR-STV

SHIRON MILLS, et al.,

    Plaintiffs,

v.

FCA US, LLC,
f/k/a Chrysler Group L.L.C.,

    Defendant.

---

## ORDER

---

Pending before the Court is Defendant FCA's Motion for Partial Summary Judgment, ECF No. 209. For the reasons stated below, the motion is GRANTED.

## I.    BACKGROUND[1]

On June 18, 2016, police officers were in pursuit of a speeding Dodge Charger (the "Charger") driven by Gabriel Dorado. ECF No. 184 at 1. Officers attempted to pull him over. *Id.* at 1–2. When officers attempted to pull him over, Mr. Dorado sped down an exit ramp, struck a curb, and the Charger flew into the air. *Id.* at 2. The Charger landed at an angle on top of the Jeep Liberty (the "Liberty") that Plaintiff, Shiron Mills, was

---

[1] The factual and procedural history of this case is laid out in the Opinion and Order Granting, in Part, and Denying, in Part, Motions for Summary Judgment and Motions to Exclude Pursuant to Fed. R. Evid. 702, entered by the previously presiding district judge, Judge Marcia S. Krieger, on September 7, 2021. ECF No. 184 at 1–3. Accordingly, the Court re-states the factual and procedural history of this case only to the extent necessary to address the pending Motion for Partial Summary Judgment, ECF No. 209.

driving.  *Id.*  As a result of the Charger's impact, it intruded into the passenger compartment and hit Ms. Mills' head, causing her catastrophic physical injuries.  *Id.*

Ms. Mills and Marvelet Randolph, Ms. Mills' mother who appears solely in a representative capacity on Ms. Mills' behalf, filed a Complaint in the District Court of Arapahoe County on June 14, 2018, ECF No. 7.  On July 26, 2018, Defendant FCA US, LLC, formerly known as Chrysler Group L.L.C. ("FCA"), the designer and manufacturer of the Jeep Liberty, removed the case to this Court.  ECF No. 1 ¶ 1.  The Plaintiffs brought product liability claims for design defect, manufacturing defect, and failure to warn, as well as claims for negligence, breach of implied warranty, and breach of express warranty against a combination of FCA and other Defendants—such as ZF Passive Safety Systems US Inc., formerly known as TRW Vehicle Safety Systems Inc. ("TRW"), the alleged designer of certain portions of the diver safety system in the Jeep Liberty— seeking recovery for Ms. Mills' injuries.  ECF No. 7 ¶¶ 76–142; *id.* at 22.

Throughout the course of this litigation, the claims against the other Defendants and most of the claims against FCA have been dismissed by stipulation, ECF Nos. 123, 187, 188, or by motion, ECF Nos. 44, 45, 54, 59, including a motion for summary judgment filed by TRW, ECF No. 124, and a motion for summary judgment by FCA, ECF No. 130. The previously presiding district judge, Judge Marcia S. Krieger, granted TRW's motion in full.  *See* ECF No. 184 at 5–14.  Judge Krieger also granted in part Defendant FCA's motion for summary judgment as to Plaintiffs' negligence claim but denied the motion as to the design defect and failure to warn claims for reasons unrelated to the arguments raised here, as further discussed below.  *Id.* at 14–23.

After this case was reassigned to the undersigned, ECF No. 186, the parties filed their Proposed Pretrial Order, ECF No. 195, which the Court entered as the Final Pretrial Order on March 21, 2022, ECF No. 196.  Pursuant to that Order and Federal Rule of Civil Procedure 16(e), the Final Pretrial Order "control[s] the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice."  ECF No. 196 at 12.  Hence, the parties' statements of their claims and defenses in the Final Pretrial Order "control the . . . course of this action and the trial."[2]  *Id.*

In the Final Pretrial Order, Plaintiffs state that they "have asserted the following legal claims" against FCA, the only remaining named Defendant and the only Defendant named in the Final Pretrial Order: "1) *Product Liability—Design Defect* and 2) *Product Liability—Failure to Warn*."  *Id.* at 4.  Plaintiffs describe two design defects that they claim rendered the Jeep Liberty unreasonably dangerous and of which FCA allegedly failed to warn Ms. Mills: (1) the Jeep Liberty lacked a metal cross car beam at the forward structure surrounding the occupant compartment; and (2) the Jeep Liberty had an "incomplete occupant restraint system that did not include side curtain airbags."  *Id.* at 2–3.  Hence, the remaining claims in this case are the design defect claim and failure to warn claim,

---

[2] The parties have since filed a "Proposed Revised Final Pretrial Order for Trial Beginning February 27, 2023," ECF No. 221.  Although the parties have "agreed on the content of the Proposed Revised Final Pretrial order," ECF No. 220 ¶ 3, the Court has not yet approved the proposed revisions because doing so before issuing this Order on the present Motion for Partial Summary Judgment would be premature.  Moreover, the proposed revisions do not include any changes to the claims asserted by the Plaintiffs in the original Proposed Pretrial Order that the Court already entered as the Final Pretrial Order.  *Compare* ECF Nos. 195 at 2–4, *and* ECF No. 196 at 2–4, *with* ECF No. 221 at 2–4.

3

both premised on the absence of a metal cross-car beam and side curtain airbags, and both brought against one Defendant—FCA.

Previously in this litigation, before it was reassigned to the undersigned, the parties also filed motions to strike or exclude certain expert testimony and opinions offered by the respective parties' expert witnesses. *See* ECF Nos. 125, 126, 127, 128, 129, 131, 132, 133. Pertinent to the present motion, on November 16, 2020, Defendants filed a Motion to Strike the Airbag Opinions of Plaintiffs' Biomechanical Expert, Marius Ziejewski, Ph.D., ECF No. 125; a Motion to Exclude Finite Element Analysis of Neil Hannemann, ECF No. 131; and a Motion to Exclude Certain Opinions of Richard Ziernicki, Ph.D., ECF No. 132. Plaintiffs had endorsed Dr. Ziejewski as a "biomechanical expert to testify about the forces that acted on Ms. Mills at the time of the accident." ECF No. 184 at 39. Neil Hannemann had "performed a 'finite element analysis' in order to 'demonstrate the importance of an instrument panel cross-car beam.'" *Id.* at 51. Finally, Plaintiffs had proffered the opinions of Dr. Ziernicki "with regard to whether a hypothetical side-curtain airbag would have deployed in the circumstances presented in this case." *Id.* at 27. On September 7, 2021, Judge Krieger granted the motion to exclude Dr. Ziejewski's opinions, *id.* at 39–44; denied the motion to strike Dr. Ziernicki's opinions, *id.* at 27–34; and granted the motion to exclude Mr. Hannemann's opinions "regarding his finite element analysis concerning the presence or absence of such a [cross-car] beam in the Jeep Liberty," *id.* at 51–54.

On May 24, 2022, Defendant FCA filed a Motion for Leave to File a Motion for Partial Summary Judgment, ECF No. 200, which the Court granted on June 10, 2022,

ECF No. 208.  FCA then filed its present motion for partial summary judgment, seeking to dismiss both of Plaintiffs' claims for design defect and failure to warn based on the absence of side curtain airbags in the Jeep Liberty.  ECF No. 209 at 2.  FCA argues that Plaintiffs' "only relevant expert opinions on this point, issued by biomechanical expert Marius Ziejewski, were stricken by the Court" and that "[w]ithout them, the causal link between Plaintiff's side-curtain airbag claims and her injuries is reduced to inadmissible speculation and assumption."  *Id.* at 2–3.  FCA does not seek to dismiss Plaintiffs' design defect and failure to warn claims based on the allegations that the Jeep's structure was weak because it lacked a metal cross car beam, and the claims based on that theory remain for trial.  *Id.* at 2 n.2.

## II.     JURISDICTION AND APPLICABLE LAW

This action is before the Court pursuant to this Court's diversity jurisdiction.  *See* 28 U.S.C. § 1332.  The Complaint and Notice of Removal indicate that Plaintiffs are residents of the State of Colorado, and nothing in the record indicates that they are domiciled elsewhere.  ECF No. 1 ¶ 10; ECF No. 7 ¶¶ 1–2; *see also, e.g.*, *Smith v. Cummings*, 445 F.3d 1254, 1259–60 (10th Cir. 2006) ("For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile. . . .  To establish domicile in a particular state, a person must be physically present in the state and intend to remain there.") (citations omitted).  Defendant FCA is a Delaware limited liability company with its principal place of business located in Michigan.  ECF No. 1 ¶ 11; ECF No. 7 ¶ 4.  The sole member of FCA is a Delaware limited liability company with its principal place of business located in the State of New York, and the sole member of that

limited liability company is a corporation organized and existing under the laws of the Netherlands with its principal place of business in the United Kingdom.  ECF No. 1 ¶ 11; *see also, e.g.*, *Gerson v. Logan River Academy*, 20 F.4th 1263, 1269 n.2 (10th Cir. 2021) ("An LLC, as an unincorporated association, takes the citizenship of all its members.  And where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC.") (internal quotations and citations omitted).  Hence, there is complete diversity among the parties.  Further, the amount in controversy exceeds $75,000.  ECF No. 1 ¶¶ 6–7.

The parties do not dispute that Colorado law applies.  This Court, sitting in diversity, applies Colorado law to this dispute.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009).

### III.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).  "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting *Zwygart v. Board of Cnty. Comm'rs of Jefferson Cnty.*, 483 F.3d 1086, 1090 (10th Cir. 2007)).  "By its very terms, this standard

provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original). Rather, "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670–71 (10th Cir. 1998). "If the movant carries this initial burden, . . . the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (internal quotations omitted). Ultimately, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## IV.   ANALYSIS

As stated above, Defendant FCA argues that Plaintiffs' "only relevant expert opinions . . . , issued by biomechanical expert Marius Ziejewski, were stricken by the Court" and that "[w]ithout them, the causal link between Plaintiff's side-curtain airbag

7

claims and her injuries is reduced to inadmissible speculation and assumption." ECF No. 209 at 2–3. Hence, Defendant argues that it is entitled to summary judgment on these claims. *Id.* at 3. For the reasons stated below, the Court agrees with Defendant FCA that Plaintiffs' design defect and failure to warn claims lack the necessary supporting expert testimony to raise a genuine issue of material fact concerning the causal link between Ms. Mills' injuries and the absence of side curtain airbags. Therefore, FCA is entitled to summary judgment on these claims, as they pertain to the absence of side curtain airbags.

### A. Design Defect Claim

An element that a plaintiff must prove to prevail on a design defect claim is causation. *See Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004) (applying Colorado law); *see also Howell v. Centric Grp., LLC*, 508 F. App'x 834, 836 (10th Cir. 2013) (applying Colorado law) ("[C]ausation is a necessary component of all Colorado product-liability claims."); *Colorado Jury Instructions Civil 4th* § 14:1 (2022) (requiring a jury to find "[t]he defect in [the product] was a cause of the plaintiff's []injuries[]" in order for a plaintiff to recover on a claim of sale of a defective product). "[A] motor-vehicle manufacturer may be held liable for injuries sustained in a motor-vehicle accident 'where a . . . design defect, though not the cause of the accident, caused or enhanced the injuries.'" *Walker v. Ford Motor Co.*, 406 P.3d 845, 849 (Colo. 2017) (quoting *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1242–43 (Colo. 1987)).

"Although causation may sometimes be inferred simply from circumstantial evidence, where questions of causation are beyond the knowledge and experience of

ordinary persons, expert testimony may be required." *Howell v. Centric Grp., LLC*, No. 09-cv-02299-MSK-CBS, 2011 WL 4499372, at *5 (D. Colo. Sept. 27, 2011) (Krieger, J.) (citing *Truck Ins. Exchange*, 360 F.3d at 1214)), *aff'd*, 508 F. App'x 834 (10th Cir. 2013); *see also Howell*, 508 F. App'x at 837 ("Where an injury has multiple etiologies, expert testimony is necessary to establish causation.") (internal quotations, alterations, and citations omitted); *Mathison v. United States*, 619 F. App'x 691, 694 (10th Cir. 2015) (citing *United Blood Servs. v. Quintana*, 827 P.2d 509, 520 (Colo. 1992)) ("Under Colorado law, expert testimony is generally required when an issue is outside the common knowledge or experience of ordinary persons."). In the Final Pretrial Order here, Plaintiffs state, in reference to the failure to warn claim, that "[t]he specific dangers created by the failure to provide . . . side curtain airbags requires a level of analysis and disclosure by FCA that exceeds the 'everyday' knowledge of the common consumer." ECF No. 196 at 3. This conclusion applies no less to the design defect claim. Moreover, in their Response to the present motion, Plaintiffs do not dispute that expert testimony is necessary under Colorado law to establish the causal connection at issue here. *See* ECF No. 214 at 10–16.

Instead, Plaintiffs argue, first, that Judge Krieger already addressed the issue of whether Plaintiffs had provided sufficient causation evidence when she denied in part FCA's prior motion for summary judgment, regarding the design defect and failure to warn claims. *Id.* at 2, 9–10. Second, Plaintiffs argue that Dr. Ziejewski's remaining, unexcluded expert opinion evidence, as well as the remaining, unexcluded opinion evidence of Dr. Ziernicki and Mr. Hannemann, are sufficient to raise a genuine issue of material fact

9

regarding whether there is a causal link between the absence of the side curtain airbags and Ms. Mills' injuries. *Id.* at 2, 10–16. The Court addresses each of these arguments, in turn.

### 1. Whether the Court's Prior Order Addressed the Causation Issue Raised in the Present Motion

According to Plaintiffs, when Judge Krieger ruled on FCA's previous motion for summary judgment on the design defect claim, ECF No. 130, she "knew exactly what evidence she excluded regarding airbags, yet still determined that a reasonable jury could find for Plaintiffs on their airbag claim." ECF No. 214 at 9. Plaintiffs point to a portion of Judge Krieger's Order in which she finds that "Ms. Mills has come forward with evidence of certain design decisions that, at least arguably, could have been made differently. . . . It will be up to the jury to determine whether these design choices rendered the Jeep Liberty unreasonably dangerous in the event of crash forces that could have been reasonably foreseeable by FCA." *Id.* at 10 (quoting 184 at 18–19).

However, as Defendant points out, the only causation issues raised in the prior summary judgment motion and addressed by the Court's prior Order were the issues of whether "(i) the nature of the accident involving Mr. Dorado's vehicle was so extreme and unforeseeable that no reasonable vehicle manufacturer could have anticipated it and designed a vehicle to withstand it; and (ii) Ms. Mills cannot show that a defective design in the Jeep Liberty was the proximate cause of her injuries because Mr. Dorado's conduct was the only cause." ECF No. 184 at 14; *see also* ECF No. 130 at 7–13 (Defendant FCA's previous motion for summary judgment); ECF No. 217 at 9–10 (Defendant's arguments in reply to Plaintiffs' response to the present motion for partial summary

10

judgment). In her prior Order, Judge Krieger found that the nature of the accident involving Mr. Dorado's conduct was not so severe that it was unforeseeable by FCA or that it broke the causal chain between the injuries and the alleged design defect. ECF No. 184 at 17, 19–21. Here, Defendant raises a different causation question: whether, after Judge Krieger's prior exclusion of certain expert opinion evidence, sufficient evidence remains to raise a genuine issue of material fact regarding the causal connection between a lack of side curtain airbags and Ms. Mills' injuries. That question has not already been addressed by the Court, and the Court finds it appropriate to address it here on Defendant's present motion.

### 2. Whether Any Remaining, Unexcluded Opinion Evidence Raises a Genuine Issue of Material Fact Regarding Causation

As stated, Plaintiffs argue that the remaining, unexcluded expert testimony of Dr. Ziejewski, Mr. Hannemann, and Dr. Ziernicki raise a dispute of material fact that precludes summary judgment. ECF No. 214 at 10–16. The Court addresses the sufficiency of the testimony of each of these three experts to withstand summary judgment, in turn.

#### a. Dr. Ziejewski

The parties appear to dispute how much of Dr. Ziejewski's testimony was excluded by Judge Krieger's prior order. *Compare* ECF No. 217 at 6–8 ("The proper, and only logical, reading of the September 7 Order has the effect of precluding all of Dr. Ziejewski's testimony opining that a side-curtain airbag would have reduced Plaintiff's injuries.") (emphasis in original), *with* ECF No. 214 at 11–14 ("Dr. Ziejewski provides numerous biomechanical opinions that have not been excluded from which the factfinder can determine causation."). First, the Court agrees with Defendant that certain of Dr.

11

Ziejewski's opinions that Plaintiffs cite as examples of unexcluded opinions were, in fact, excluded by the Court. However, the Court need not fully resolve which portions of Dr. Ziejewski's testimony were excluded because, even assuming certain portions cited by Plaintiffs were not excluded, they would be insufficient to raise a genuine dispute of material fact.

First, the Court finds it likely that certain opinions discussed in Plaintiffs' arguments were excluded by Judge Krieger's prior Order. Judge Krieger's prior Order found that, "[t]o the extent that [Dr. Ziejewski's] opinion is that a side-curtain airbag ordinarily would protect the driver in a side-impact collision, it is not an opinion based upon scientific analysis as required under Rule 702." ECF No. 184 at 42. Judge Krieger further found that "Dr. Ziejewski's opinion about the cushioning effect of a hypothetical side-curtain airbag is simply a non-scientific opinion that would not be of assistance to the factfinder." *Id.* at 43. She excluded that opinion regarding the "cushioning" effect of a side curtain airbag, as well as "Dr. Ziejewski's opinion regarding the 'dragging' effect that a hypothetical side-curtain airbag would have had in causing Ms. Mills' body to move laterally during the accident." *Id.* at 43–44. Plaintiffs appear to attempt to distance certain opinion evidence that they seek to rely on from the opinion evidence excluded by Judge Krieger by making thinly veiled attempts to rephrase or reframe those opinions as opinions not involving the "cushioning" or "dragging" effect of a side curtain airbag. However, the opinions referenced in Plaintiffs' following arguments were likely excluded by Judge Krieger's Order, and the Court need not consider them here:

1. "[T]he Court did not exclude[] Dr. Ziejewski's opinions or the scientific basis as to *how* an airbag would have provided cushioning." ECF No. 214 at 11 (emphasis in original).

2. "Dr. Ziejewski . . . opines on how Ms. Mills' body moved during the collision prior to airbag deployment and then in the collision phase establishing airbag deployment and coverage of the head impact area." *Id.* at 13–14.

3. "Dr. Ziejewski . . . opines on the deployed airbag geometry and that the available space would have provided protection for Ms. Mills' head position due to her bracing movement prior to the collision." *Id.* at 14.

Despite Plaintiffs' insistence to the contrary, these opinions were likely excluded.

Plaintiffs also argue, without specific citation to the record, that "the Court did not exclude[] Dr. Ziejewski's opinions or the scientific basis as to . . . the level of injury protection an airbag would have provided (had it been installed)." *Id.* at 11. The Court finds it very likely that the opinion described here by Plaintiffs—again, without specific citation—were excluded by Judge Krieger's previous Order. Nonetheless, the Court need not consider it because, once the movant makes a prima facie demonstration of the absence of a genuine issue of material fact, as FCA has done here, it is the nonmovant's burden to "set forth specific facts" with citations to the record "that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 670–71; *Mitchell v. City of Moore*, 218 F.3d 1190, 1198–99 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the nonmovant's] arguments for him."). Plaintiffs have not pointed to a record

13

citation providing unexcluded opinion evidence by Dr. Ziejewski of "the level of injury protection an airbag would have provided," and therefore have not carried their burden to withstand summary judgment on this point.

The remaining opinions that Plaintiffs argue constitute unexcluded testimony by Dr. Ziejewski that would allow a factfinder to find a causal link between the absence of a side curtain airbag and the injuries are insufficient to withstand summary judgment. Plaintiffs argue that:

1. "Dr. Ziejewski opines, among other things, *how* an airbag prevents injury: by showing the acceleration of the head over a period of time and preventing contact with intruding structures." ECF No. 214 at 11 (emphasis in original) (citing ECF No. 214-2 at 26; No. 214-6 at 41–42).

2. "Dr. Ziejewski . . . confirms his opinion that the safer alternative designs suggested by Mr. Hannemann—which include a side curtain airbag—Ms. Mills' injuries would have been less severe." *Id.* at 13.

3. "Dr. Ziejewski . . . relying on Dr. Ziernicki's opinions, opines that the airbag 'would have fired with supporting structure before the deformation' and the airbag would be in place as the deformation occurred." *Id.* at 14.

4. "Assuming the factfinder determines that the hypothetical side curtain airbag would have provided protection to Ms. Mills[], Dr. Ziejewski[] provides the ultimate causation opinion that, if there was a cushioning effect provided by the hypothetical deployed airbag, it would have reduced the level of head angular acceleration and significantly reduce[d] her injuries." *Id.*

Even if these opinions were not excluded, they do not close the gap between the general effects of airbags and the specific causal link between these injuries and the absence of side curtain airbags in this Jeep Liberty. *See, e.g.*, *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 988 (Colo. Ct. App. 2011) ("To establish causation, . . . the plaintiff must establish causation beyond mere possibility or speculation.") (internal quotations and citation omitted); *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987) ("[T]he plaintiff must establish causation beyond mere possibility or speculation."). "It is not sufficient to show a set of circumstances bringing [a] theory of [causation] within the realm of possibilities." *Franklin v. Skelly Oil Co.*, 141 F.2d 568, 570–71 (10th Cir. 1944). As discussed below, the opinion testimony of Mr. Hannemann and Dr. Ziernicki is also insufficient for Plaintiffs to withstand summary judgment on these claims, and without the excluded biomechanical opinion evidence of Dr. Ziejewski, the opinions and testimony listed above would be based on "mere speculation, conjecture, or surmise," which is insufficient to withstand summary judgment. *See Honeywell Int'l*, 366 F.3d at 876.

Finally, Plaintiffs then appear to argue that the factfinder will be capable of making the causation determination without the excluded expert testimony. *See* ECF No. 214 at 11–13 (describing Judge Krieger's prior Order as finding that certain conclusions of Dr. Ziejewski were "'non-scientific' . . . and unhelpful to the jury because the *factfinder* could itself consider and reach its own conclusions from its own observations") (emphasis in original). However, this contradicts Plaintiffs' acknowledgment in the Final Pretrial Order that "[t]he specific dangers created by the failure to provide . . . side curtain airbags requires a level of analysis and disclosure by FCA that exceeds the 'everyday' knowledge

15

of the common consumer." ECF No. 196 at 3. Moreover, as noted above, Plaintiffs do not dispute that Colorado law requires expert testimony to establish the causal connection at issue here. *See* ECF No. 214 at 10–16.

### b. Dr. Ziernicki and Mr. Hannemann

Finally, none of Plaintiffs' arguments regarding the opinions of Dr. Ziernicki or Mr. Hannemann are sufficient to withstand summary judgment here. First, Plaintiffs argue that Dr. Ziernicki "will provide the jury evidence from which it can determine that a side curtain airbag would have deployed at a speed of 11–28 milliseconds after the impact before intrusion into the occupant compartment" and that "the airbag would have filled the void/closed the gap between the driver side structure and Ms. Mills prior to any significant vehicle intrusion and prior to any harmful interaction between . . . Ms. Mills and the driver door." ECF No. 214 at 14–15. However, "Courts applying Colorado law have concluded that proof of 'temporal relation . . . is insufficient to carry the burden of proof' on causation." *Mathison*, 619 F. App'x at 694 (quoting *In re Swine Flu Immunization Prods. Liab. Litig.*, 533 F. Supp. 567, 579–81 (D. Colo. 1980)); *see also Howell*, 2011 WL 4499372, at *6 ("Without evidence as to other causes of such injuries and a reasonable basis for excluding the alternatives, or any information about what level of exposure would be sufficient to cause the alleged injury, the jury would be left with only the temporal relationship between these events from which to infer causation. This suggests only the possibility of a connection and is not a reliable basis for making an inference regarding specific causation."). Therefore, without the excluded biomechanical expert opinions of

Dr. Ziejewski, opinions that the airbag would have deployed before the impact between Ms. Mills' body and the car's door and structures is insufficient.

Similarly, Plaintiffs point to additional opinions of both Dr. Ziernicki and Mr. Hannemann which, without the excluded biomechanical expert opinions of Dr. Ziejewski, would be based on "mere speculation, conjecture, and surmise," which is insufficient to withstand summary judgment. *Honeywell Int'l*, 366 F.3d at 876. Plaintiffs argue that "Dr. Ziernicki's opinions and evidence concerning the geometry of the vehicle" and the "location of the side-curtain airbag" allow the factfinder to consider whether the side curtain airbag "would have provided protection to Ms. Mills." ECF No. 214 at 15. They point to the somewhat conclusory opinion of Dr. Ziernicki that "it would have provided her some protection in this accident." *Id.* In addition, Plaintiffs argue that Mr. Hannemann's opinion that if the car's structure had been maintained, a hypothetical side curtain airbag "would have deployed and would have been effective if the structure had been maintained" is "directly on point" and an "issue for the jury to consider." *Id.* at 15–16 (emphasis omitted). However, as stated above, "[i]t is not sufficient to show a set of circumstances bringing [a] theory of [causation] within the realm of possibilities," *Franklin*, 141 F.2d at 570–71, and "the plaintiff must establish causation beyond mere possibility or speculation," *Sharp*, 741 P.2d at 719. The remaining expert testimony in this case is insufficient to allow "a rational trier of fact [to] find for the nonmovant," *Adler*, 144 F.3d at 670–71, and therefore Defendant is entitled to summary judgment on Plaintiffs' design defect claim, as it pertains to the Jeep Liberty's lack of a side curtain airbag at the time of the accident.

17

B.     **Failure to Warn Claim**

In ruling on FCA's previous motion for summary judgment, the Court noted that the Colorado Supreme Court's holding in *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1248 (Colo. 1987) "suggests that when a claim for design defect created by omission of safety equipment is coupled with a claim for failure to warn, the obligation to provide a warning (that the safety equipment is available or that risks are increased without it) exists only if the warning would have been efficacious." ECF No. 184 at 22 (citing *Camacho*, 741 P.2d at 1248). In *Camacho*, the Colorado Supreme Court noted that "[a] manufacturer may be strictly liable to the user of a product when failure to provide adequate warnings renders the product defective and unreasonably dangerous." 741 P.2d at 1248. In the context of a failure to warn claim regarding the absence of "injury-reducing crash bars" on a motorcycle, the Colorado Supreme Court stated that "[a]rguably, a warning that injury-reducing crash bars were available as optional equipment or as add-on equipment would render an otherwise unreasonably dangerous motorcycle reasonably safe." *Id.* Therefore, the Court "conclude[d] that the efficacy of providing a warning is an appropriate issue for further inquiry by the trial court on remand." *Id.*

The Colorado Supreme Court later referred to this as the "*Camacho* efficacy test" and further noted that "failure-to-warn and design-defect claims often arise in the same context and are not sharply differentiated." *Armentrout v. FMC Corp.*, 842 P.2d 175, 181 (Colo. 1992). For example, similar to the design defect claim, "as with all tort claims, the plaintiff must prove the element[] of causation" when bringing a failure to warn claim in

18

both the negligence and strict liability contexts. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 791 (10th Cir. 1997) (applying Colorado law); *see also Bailey v. Montgomery Ward & Co., Inc.*, 635 P.2d 899, 900 (Colo. Ct. App. 1981) (noting that the trial court's failure to instruct the jury on the possibility of finding negligence based on failure to warn was reversible error where "the jury might have concluded that [the defendant] had the duty to warn the buyers, and **its failure to do so was the proximate cause** of the accident resulting in injury") (emphasis added).

Here, as stated above, Plaintiffs have not provided sufficient evidence to raise a genuine issue of material fact regarding whether a causal link exists between the alleged injuries and the absence of side curtain airbags. Without sufficient evidence of this causal link between the injuries and the alleged design defect, Plaintiffs also cannot raise a genuine issue of material fact concerning whether a warning about the design defect would have been "efficacious." *See* ECF No. 184 at 22. Hence, Plaintiffs fail to "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find" that Plaintiffs' failure-to-warn claim passes the *Camacho* efficacy test. *See Adler* 144 F.3d at 670–71 (internal quotations and citations omitted); *Camacho*, 741 P.2d at 1248; *Armentrout*, 842 P.2d at 181. Similarly, Plaintiffs cannot raise a genuine issue of material fact regarding whether a causal connection exists between the failure to warn and the injuries. In other words, by failing to demonstrate that a trier of fact could find that the absence of side curtain airbags made a difference to Ms. Mills' injuries, as discussed above, Plaintiffs accordingly also fail to demonstrate that a finder of fact could find that a warning about the absence of side curtain airbags would

have made a difference to her injuries. Defendant is therefore entitled to summary judgment on Plaintiffs' failure to warn claim, as well.

## V.     CONCLUSION

For the reasons stated above, Defendant FCA's Motion for Partial Summary Judgment, ECF No. 209, is GRANTED.

DATED:  January 12, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge